<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| KEITH MANFREDI, | : | Civil No.: 12-1905 (RMB) |
|  | : |  |
| Petitioner, | : |  |
|  | : |  |
| v. | : | **O P I N I O N** |
|  | : |  |
| UNITED STATES OF AMERICA, et al., | : |  |
|  | : |  |
| Respondent. | : |  |

**APPEARANCES:**

> KEITH MANFREDI, Petitioner <u>Pro</u> <u>Se</u>
> #75325-053
> F.C.I. Fort Dix
> East P.O. Box 2000
> Fort Dix, NJ 08640
>
> JOHN ANDREW RUYMANN, AUSA
> OFFICE OF THE U.S. ATTORNEY
> 402 East State Street, Suite 430
> Trenton, New Jersey 08608
> Counsel for Respondents

**BUMB,** District Judge

On or about March 28, 2012, petitioner, Keith Manfredi ("Petitioner"), filed this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, in which he challenges sanctions imposed as the result of a prison disciplinary infraction. Petitioner asks the Court to expunge the disciplinary action imposed against petitioner. The named respondents are the United States of America, the United States Justice Department and the

Federal Bureau of Prisons ("BOP")(hereinafter, the "Government").
Respondent answered the petition on August 13, 2012, and provided
a copy of the pertinent administrative record.  (Docket Entry No.
10).  Petitioner filed a reply/traverse to the Government's
answer on September 10, 2012.  (Docket entry no 11).

## I.  BACKGROUND

Petitioner challenges an October 7, 2011 prison disciplinary
finding, which resulted in the loss of good conduct time ("GCT")
and visitation privileges.  Petitioner seeks his immediate
release from prison.

Petitioner is presently serving a 46-month prison sentence
imposed by the United States District Court for the Eastern
District of New York, on April 15, 2009, following his conviction
for distribution and possession with intent to distribute
marijuana, in violation of 18 U.S.C. §§ 841(a)(1), 841(b)(1)(D).
922(g)(1).  Petitioner's projected release date is December 27,
2012, assuming he receives all good conduct time ("GCT")
available to him under 18 U.S.C. § 3624(b).  (See Declaration of
Tara Moran, Document 1a).

The incident at issue in this habeas petition involves an
Incident Report, dated August 25, 2011, charging Petitioner with
the Use of Any Narcotics, Drugs or Alcohol, in violation of Code
112, because Petitioner's urine sample, taken on August 17, 2011,
tested positive for cocaine.  (Moran Decl., Doc. 2b).  At the

2

time of the drug testing, Petitioner was assigned to the Brooklyn

House, a BOP contracted Residential Re-Entry Center ("RRC").   On

August 26, 2011, Petitioner was arrested at the halfway house by

U.S. Marshals, and was taken to the Metropolitan Detention Center

in Brooklyn, New York ("MDC Brooklyn").

The reporting employee, Windy Martinez, stated the following

in the description section of the Incident Report:

> On Thursday, August 25, 2011, at approximately 10:00 am, a
> positive urinalysis result was printed by the undersigned
> from the Laboratory Corporation of America website.   The
> urine sample for Chain of Custody # 0442554173, taken on
> August 17, 2011, tested positive for Cocaine (Metab.)
>
> Further investigation indicates that the Chain of Custody ID
> # 0442554173 belongs to resident Manfredi, Keith reg. #
> 75325-053.
>
> Upon reviewing resident Manfredi, Keith reg. # 75325-053
> Chain of Custody ID # 0442554173, indicates that there were
> no medications listed that would test positive for Cocaine
> (Metab.)

(Moran Decl., Doc. 2b, Incident Report at ¶ 11).

The Incident Report also indicates that the matter was

investigated on September 30, 2011.   Specifically, the Incident

Report shows that Petitioner was advised of his rights during the

disciplinary process on September 30, 2011, at 5:50 p.m.   (Id.,

Incident Report at ¶ 23).   The Incident Report further provides

Petitioner's statement to the investigating staff as follows:

> Resident Manfredi, Keith Reg. # 75325-053 stated that he did
> not ingest, snort, smoke, or inject cocaine.   Also resident
> stated that he was on multiple supplements such as Creatine,
> protein, amino acid, testosterone booster, HGH Booster, fat
> burner, multi vitamin.   Inmate also took casein powder at

3

night and creatic.   Inmate states he unknowingly may have
handled cash that had cocaine on the money.   Resident also
stated that prior to 8/17/11 and on that day he handled
$18,000.00 in cash from his employer who sells kitchen
cabinets.

(Id., Incident Report at ¶ 24).

The following documents were attached to the Incident Report

for purposes of the investigation:

Attached is a chain of custody form # 0443554173 for
resident Manfredi, Keith Reg # 75325-053, dated 8/17/11.   A
positive test result for cocaine for chain of custody form
# 0442554173.   A copy of the orientation checklist signed by
Manfredi, Keith Reg # 75323-053 on 8/10/11.   Resident
handbook pages 36/37.   The resident produced evidence that
included invoices numbered 4, 5, 6, 7, 8 & 9, internet
information from articles US bills can cause false positives
for cocaine on drug test, study; cocaine traces found on
100% of paper money tested in Detroit, and Article from
Snoops.Com, Titled Cocaine on Money & A Letter from owner of
Kitchen & Bathroom Emporium.   Resident also submitted an
article Can Cocaine get into your urine by touching it?
Yahoo Answers (2008-05-16-23, 09:03 0000).

(Id., Incident report at ¶ 25).

The investigating staff concluded, based on the weight of

the evidence, that the prohibited act was committed and referred

the incident to the Center Discipline Committee ("CDC") at the

Metropolitan Detention Center ("MDC") Brooklyn.   (Id., Incident

Report at ¶¶ 26, 27).   The investigation was completed on

September 30, 2011 at 6:05 p.m.   (Id., Incident Report at page

3).

On September 30, 2011, Petitioner was given a Notice of CDC

Hearing, which advised him that he was charged with "Use of Any

Narcotics, Drugs, Alcohol," a code 112 violation, and that the

4

charge was referred to the CDC for a hearing to be held on October 3, 2011, at 6:00 p.m., at the MDC Brooklyn.  The Notice informed Petitioner that he was entitled to a staff representative at the hearing, and that he had the right to call witnesses at the hearing.  Petitioner signed the Notice of CDC Hearing on September 30, 2011, indicating that he requested Ms. Robin Causey, the RRC Director, to be his staff representative and that he did not request any witnesses at the hearing.  (Moran Decl., Doc. 2c (Notice of CDC Hearing)).  On September 30, 2011, Petitioner also received a notice advising him of his rights at a CDC hearing.  (Moran Decl., Doc. 2d).

On October 3, 2011, a CDC hearing was conducted at which Petitioner was given a copy of the Incident Report.  (Moran Decl., Docs. 2a and 2b).  The CDC Report noted that Petitioner had invoked his right to a staff representative and Ms. Causey appeared for him in that capacity; that Petitioner had been advised of his rights before the CDC on September 30, 2011; and that Petitioner denied the charges and told the CDC that he did not use cocaine and that it was possible that the supplements he took caused the positive results.  The CDC Report also showed that Petitioner did not request any witnesses.  Documentary evidence reviewed by the CDC included the Incident Report and investigation; the "Laboratory Test Result, Chain of Custody # 0442554173, Brooklyn House Intake Process Orientation Checklist,

Brooklyn House Handbook pages # 36 and # 37, and miscellaneous papers that resident Manfredi submitted." (Moran Decl., Doc. 2e, CDC Report at §§ I, II and III A through D).

The CDC found that the act was committed as charged, and stated the specific evidence relied upon to support its finding, namely, the positive urinalysis result and the absence of medications that would cause a positive test for Cocaine (Metab). (Moran Decl., Doc. 2e, CDC Report at § V).  Accordingly, the CDC recommended that Petitioner be sanctioned with the loss of 50% of his good conduct time ("GCT") and completion of his sentence at a more secure facility with the possibility of halfway house placement.  (Id., CDC Report at § VI).

In accordance with BOP policy, the CDC referred the matter to the Discipline Hearing Officer ("DHO") for MDC Brooklyn.  See BOP Program Statement 7300.09, §§ 5.7 and 5.8.  In a letter dated October 4, 2011, from CDC Chairperson, Rafael Nazano, to the DHO at MDC Brooklyn, Nazano wrote:

> The CDC procedure for resident Manfredi, Keith reg. # 75325-053 was not completed by the prescribed time frame for the following reasons:
>
> On September 8, 2011, the CDC procedure for resident Manfredi was completed at MDC Brooklyn.  However, due to discrepancies in the CDC report of resident Manfredi, the CCM office instructed Brooklyn House staff that CDC process is required to complete resident Manfredi's CDC procedure.
>
> On September 30, 2011, the investigation for resident Manfredi's incident report was completed at MDC Brooklyn. During the investigation, resident Manfredi requested the

> Facility Director, Ms. Causey to be his staff representative
> at the hearing.
>
> On Monday, October 3, 2011, Ms. Causey and I went to MDC
> Brooklyn to conduct the CDC hearing.  During the CDC
> hearing, it was discovered that the Incident Report was not
> delivered to resident Manfredi; therefore, on October 3rd,
> the Incident Report was delivered to resident Manfredi and
> the CDC hearing was conducted and completed.

(Moran Decl., Doc. 2a).

On October 7, 2011, the DHO at MDC Brooklyn reviewed the CDC

Hearing Report and imposed the following sanctions: (1) 40 days

loss of GCT; (2) 80 days loss of not vested GCT; (3) one year

loss of visitation privileges from October 7, 2011 through

October 6, 2012; and (4) one year visitation privilege restricted

to immediate family only from October 7, 2011 through October 6,

2012.  These sanctions were documented at the bottom of the CDC

Report in Section X, and Petitioner was advised of his appeal

rights in Section VIII of the CDC Report.  (Moran Decl., Doc.

2e).

Petitioner appealed the disciplinary findings of the

CDC/DHO, and his administrative appeals were denied at both the

Regional and Central Offices' level of review.  It appears that

the Regional Office denied Petitioner's appeal on December 14,

2011, and the Central Office denied Petitioner's administrative

appeal on June 27, 2012.  (Moran Decl. at ¶¶ 4, 5, and Doc. 1b).

The Government did not provide copies of the Regional and Central

Office decisions on Petitioner's administrative appeal.

7

Petitioner filed this habeas action on or about March 28, 2012.  In his petition, Petitioner alleges that he was denied due process in his disciplinary proceedings.  Namely, Petitioner alleges that he did not receive advance written notice of the charges against him before his October 3, 2011 CDC hearing.  Specifically, Petitioner received a copy of the Incident Report that day.  He further alleges that after he was taken to the MDC Brooklyn, on September 7, 2011, he spoke with his counselor and was informed that there was no incident report on Petitioner in the computer.  (Petition at pp. 5-8).

Petitioner also alleges that he was denied his right to present documentary evidence at the hearing, such as an independent testing of his urine sample.  In addition, Petitioner asked to submit papers he had detailing that the nutritional supplements he was taking can cause a false positive result on a drug test, but he was not permitted to retrieve those documents, having been told by the CDC Chair Person, Mr. Nazano, that he did not need them.  (Pet., pp. 8, 18-19).  Petitioner further argues that only the DHO, not the CDC, can impose sanctions involving the loss of GCT.  He contends that the CDC's finding of Petitioner's guilt was predetermined as evidenced by a completed CDC Report at his October 3, 2011 hearing.  He also disputes that he asked Ms. Causey to be his staff representative at the CDC hearing.  Instead, Petitioner alleges that he was told he could

have two witnesses, and he chose Ms. Causey and Mr. Cruz, a security guard at the halfway house.  He alleges that Ms. Causey did not act as his advocate at the hearing.  (Pet., pp. 9, 13-14, 16-17).

In sum, Petitioner asserts that he was denied due process because he was not given 24 hour notice of the Incident Report before his CDC hearing, he was denied the right to call witnesses and present documentary evidence, his hearing was predetermined, and the sanctions were excessive.

The Government agrees that Petitioner has exhausted his administrative remedies in this case.

## II.  DISCUSSION

A.  Standard of Review

Petitioner seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241(c)(3).[1]  That section states that the writ will not be extended to a prisoner unless "he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3).

---

[1]  United States Code Title 28, Section 2241, provides in pertinent part:

> (a) Writs of habeas corpus may be granted by the district courts within their respective jurisdictions

> (c) The writ of habeas corpus shall not extend to a prisoner unless-   (3) He is in custody in violation of the Constitution or laws or treaties of the United States.

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

B.  Applicable Regulations

The Federal Bureau of Prisons ("BOP") has specific guidelines for inmate disciplinary procedures, which are codified at 28 C.F.R. § 541.10 et seq.  Prohibited acts are categorized according to the severity of the conduct.  Code Level 100s are deemed the "Greatest", code level 200s as "High", and proceeding to 400 level codes as "Low Moderate."  The Prohibited Acts Code and Disciplinary Severity Scale is set forth at 28 C.F.R. § 541.13 Tables 3-5.

Because Petitioner was a resident at a halfway house at the time of the incident, BOP Program Statement 7300.9 governs disciplinary proceedings in this instance, specifically Sections 5.7 and 5.8.  Section 5.7 applies to all inmates in contract facilities, which are required by the terms of their contract to use a discipline system in which a BOP DHO takes final action.

10

Table 3 "Prohibited Acts and Disciplinary Scale" in the BOP
Program Statement on Inmate Discipline and Special Housing Units,
as set forth above, are used in the community corrections
disciplinary process.  Further, this BOP Program Statement
requires community corrections facilities to establish internal
disciplinary procedures that comply with the due process mandates
fixed in Wolff v. McDonnell, 418 U.S. 539, 556 (1974).

Generally, the procedures of the CDC follow those procedures
as set forth in BOP Program Statement 5270.09, Inmate Discipline.
Inmates cited for disciplinary infractions are entitled to
receive a hearing before the center's disciplinary committee,
which adjudicates the alleged violation, and submits a
comprehensive hearing packet, along with a recommended
disposition, to the DHO.  The DHO, in turn, reviews the CDC
hearing materials to ensure that due process requirements have
been met, and to determine a final sanction for any infractions
found to have been committed as supported by the evidence.  After
conducting this review, the DHO then makes a final decision
concerning the sanction to be imposed against the inmate.  See
Sierra v. Scism, 2010 WL 5553955 at *2 (M.D.Pa. Dec. 14, 2010).

At issue in this action, due process procedures for CDC
hearings should include the following: (a) 24-hour advance
written notice of charge before inmate's initial appearance; (b)
an inmate shall be provided a staff representative at his/her

11

hearing, if so desired; (c) an inmate is entitled to make a statement and to present documentary evidence at the hearing; the inmate may also call witnesses to testify on his behalf; and (d) the inmate is entitled to be present throughout the hearing. Finally, a written copy of the DHO's decision and disposition must be provided to the inmate ordinarily within 10 days.[2]

These procedures are intended to meet or exceed the due process requirements prescribed by Wolff v. McDonnell, 418 U.S. 539 (1974).  See Von Kahl v. Brennan, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994).

---

[2] These procedures track more specific regulations governing DHO hearing procedures, which are set forth at § 541.17.  These procedures require the following: (a) 24-hour advance written notice of charge before inmate's initial appearance before the DHO; this right may be waived, § 541.17(a); (b) an inmate shall be provided a staff representative at the DHO hearing, if so desired, § 541.17(b); (c) an inmate is entitled to make a statement and to present documentary evidence at the DHO hearing; the inmate may also call witnesses to testify on his behalf, but may not himself question the witnesses, § 541.17(c); (d) the inmate is entitled to be present throughout the hearing, except during a period of deliberation or when institutional security would be jeopardized, § 541.17(d).  The DHO shall prepare a record of the proceedings that documents the advisement of the inmate's rights, the DHO's findings, the DHO's decision, the specific evidence relied upon by the DHO, and a brief statement of the reasons for imposition of sanctions.  28 C.F.R. § 541.17(g).  A written copy of the DHO's decision and disposition must be provided to the inmate ordinarily within 10 days.  Id.

C.  <u>Merits of Petitioner's Claims</u>

    1.  *There Was No Denial of Procedural Due Process*

    The Due Process Clause of the Fifth or Fourteenth Amendments provides that liberty interests of a constitutional dimension may not be rescinded without certain procedural protections.  U.S. CONST. amend. XIV.  In <u>Wolff v. McDonnell</u>, <u>supra</u>, the Supreme Court set forth the requirements of due process in prison disciplinary hearings.  An inmate is entitled to (1) written notice of the charges and no less than 24 hours to marshal the facts and prepare a defense for an appearance at the disciplinary hearing; (2) a written statement by the fact finder as to the evidence relied on and the reasons for the disciplinary action; and (3) an opportunity "to call witnesses and present documentary evidence in his defense when to do so will not be unduly hazardous to institutional safety or correctional goals."  <u>Wolff</u>, 418 U.S. at 563-71.  An inmate is also entitled to an inmate representative in some cases, and a written decision by the factfinder as to evidence relied upon and findings.  <u>See</u> <u>Von Kahl</u>, 855 F. Supp. at 1418 (citing <u>Wolff</u>, 418 U.S. at 563-72). However, in <u>Wolff</u>, the Supreme Court held that, while prisoners retain certain basic constitutional rights, including procedural due process protections, prison disciplinary hearings are not part of criminal prosecution, and an inmate's rights at such hearings may be curtailed by the demands and realities of the

prison environment.  Id. at 556-57; Young v. Kann, 926 F.2d 1396,
1399 (3d Cir. 1991).

The first due process violation asserted by Petitioner is
that he did not receive written notice of the disciplinary
charges at least 24 hours before his hearing, and in fact,
received his Incident Report on October 3, 2011, the very day of
his CDC hearing.  The Government responds that Petitioner was
well familiar with the charge against him, having been provided
with an executed Notice of Center Discipline Committee hearing
form on September 30, 2011.  Specifically, this notice informed
Petitioner of the violation charged against him, the date of the
offense and the date, time and location of his CDC hearing.

This Court finds no due process violation with respect to
notice of the charges against him before his October 3, 2011
hearing.  Petitioner received notice of the charge against him on
September 30, 2011, and he was present at the September 30, 2011
investigation of the charges.  Thus, it can not be said that
Petitioner was uninformed or unprepared to address the charges
against him when he appeared for his CDC hearing on October 3,
2011.  Moreover, as the Government correctly argues, Petitioner
must show that he was prejudiced by not receiving the incident
report within 24 hours, and he has not done so.  See Bullard v.
Scism, 449 Fed. Appx. 232, 235 (3d Cir. 2011)(citing Von Kahl,

14

855 F. Supp at 1421); see also Wilson v. Ashcroft, 350 F.2d 377, 380-81 (3d Cir. 2003).

Next, Petitioner alleges that he was not permitted to call witnesses and that he did not request for Ms. Causey to be his staff representative at his CDC hearing.  These allegations are belied by the record.  The September 30, 2011 Notice informed Petitioner that he could call witnesses and request a staff representative.  The Notice expressly shows that Petitioner checked and initialed the box requesting a staff representative and it shows that Ms. Causey was requested as his representative. Petitioner initialed and signed this Notice on September 30, 2011.  Moreover, Petitioner cannot show any demonstrable prejudice with regard to the alleged lack of witnesses at his CDC hearing.  He states that he wanted to call Ms. Causey and a security guard as character witnesses on his behalf.  In light of the documentary evidence reviewed and considered by the CDC, including Petitioner's articles regarding false positive results, and Petitioner's denial of the charges, it is not likely that character testimony from a security guard at the halfway house would have been critical in the CDC's decision.[3]

---

[3]  As to the allegation that Ms. Causey did not act as his advocate, the record shows that Petitioner's wife sent documents to Ms. Causey, on August 28, 2011, for her to present at Petitioner's hearing.  This confirms not only that Ms. Causey acted as Petitioner's representative, but also that Petitioner had intended to have Ms. Causey represent him at the CDC hearing. (Moran Decl., Doc. 2b).  The date of the letter from Petitioner's

Next, Petitioner alleges that he was denied the opportunity to present documentary evidence.  Again, this allegation is contradicted by the record.  The Incident Report for the CDC hearing attaches articles provided by Petitioner, through his wife having submitted them to Ms. Causey for introduction at the hearing.  (Moran Decl., Doc. 2b).  However, it appears from the petition that Petitioner also is arguing that he was not given an opportunity to obtain a second, independent lab test in violation of his due process rights under Wolff.  Wolff does not, however, guarantee prisoners the unfettered right to call any witness or present any evidence they wish regardless of its relevance or necessity.  See Wolff 418 U.S. at 566-67 (stating reasonable penological needs may limit the right to present evidence); see also Garrett v. Smith, 180 Fed. Appx. 379, 381 (3d Cir. May 12, 2006); Spence v. Farrier, 807 F.2d 753, 756 (8th Cir. 1986) (although inmates are permitted to present a defense, they are not entitled to have confirmatory testing done; to allow routine challenges to the reliability of drug tests "would seriously interfere with the institutional goal of drug deterrence and prompt resolution of drug related infractions"); Ray v. Caraway, 2012 WL 3156832 at *7 (D.Md. Aug. 2, 2012); Rivas v. Cross, 2011 WL 1601289 at *7-8 (N.D.W.Va. Apr. 1, 2011); Batista v. Goord,

---

wife further confirms that Petitioner had advance knowledge of his hearing so as to give him opportunity to prepare a defense.

2005 WL 2179420 (N.D.N.Y. Aug. 28, 2005)(inmate has no due process right to have substance retested at an outside laboratory); Swint v. Vaughn, 1995 WL 366056 at *6 (E.D.Pa. June 19, 1995)("An inmate has no due process right to submit a second sample for drug testing"). Therefore, this Court finds no due process violation, as it is clear from the record that Petitioner was given every reasonable opportunity to present documentary evidence at his CDC hearing.[4]

Finally, Petitioner seems to argue that he was denied the opportunity to be heard because he did not appear before a DHO hearing. Because Petitioner was housed at a halfway house at the time of his incident, due process is afforded at a CDC hearing, not a DHO hearing. See Sierra v. Scism, 2011 WL 65665, *2 (M.D.Pa. Jan. 7, 2011)("every court which has examined the

---

[4] Petitioner also appears to argue that the CDC hearing was predetermined and that is why he was not given an opportunity to present evidence. Petitioner provides no facts to support his argument of bias and predetermination. He merely states that the CDC Report was already typed with its finding and recommended sanction at the time he appeared at the October 3, 2011 hearing. A review of the CDC Report provided shows a typewritten report with handwritten notations regarding Petitioner's statement, denial of charges, and the sanctions recommended. It is plain from the report that the documentary evidence was submitted and reviewed beforehand. Nevertheless, it is equally clear from the handwritten entries that the CDC considered all relevant arguments made by Petitioner at the time of the hearing. Indeed, based on Petitioner's arguments, the recommended sanctions were reduced at the conclusion of the hearing. (Moran Decl., Doc. 2e). Accordingly, this Court finds that Petitioner's general allegation of bias and predetermination is insufficient to prove a due process violation here. See Sierra v. Scism, 2010 WL 5553955, *5 (M.D.Pa. Dec. 14, 2010).

procedures established by Program Statement 7300.09 has held that
these procedures satisfy the procedural due process requirements
established by the Supreme Court in Wolff v. McDonnell”);
Fernandes v. Warden, USP-Lewisburg, 2007 WL 1120520 (M.D.Pa.
April 13, 2007); Castro v. United States Bureau of Prisons, 2005
WL 2205791 (D.N.J. Sept. 8, 2005); see also Mazzanti v. Bogan,
866 F. Supp. 1029, 1033 (E.D. Mich. 1994); Stevens v. Thomas,
2011 WL 3563131, *4 (D.Or. Aug. 10, 2011); Harris v. Norwood,
2008 WL 5377647, *1 (C.D.Cal. Dec. 16, 2008)(no due process
violation where petitioner at RRC given CDC hearing, with review
by DHO prior to sanctions of loss of GCT and disciplinary
transfer).  As one court aptly stated, “Wolff does not mandate
that [p]etitioner be granted two hearings[,] one before the CDC
and one before the DHO.”  Rini v. Nash, 2005 WL 2033689, *3
(D.N.J. Aug. 22, 2005).

Therefore, where Petitioner in this case was provided with a
CDC hearing, and where review of the CDC procedures by the DHO
shows that due process protections were met, as required under
Wolff or Von Kahl, this Court concludes that Petitioner has not
demonstrated any procedural due process violation sufficient to
warrant habeas relief under § 2241.

2.  *Sufficient Evidence to Support the Charge and Sanctions*

The Supreme Court has held that procedural due process is
not satisfied “unless the findings of the prison disciplinary

board are supported by some evidence in the record."

Superintendent v. Hill, 472 U.S. 445, 454-55 (1985); Young v.

Kann, 926 F.2d 1396, 1402-03 (3d Cir. 1991).  The Supreme Court

has stated:

> Prison disciplinary proceedings take place in a highly
> charged atmosphere, and prison administrators must
> often act swiftly on the basis of evidence that might
> be insufficient in less exigent circumstances.  The
> fundamental fairness guaranteed by the Due Process
> Clause does not require courts to set aside decisions
> of prison administrators that have some basis in fact.
> Revocation of good time credits is not comparable to a
> criminal conviction, and neither the amount of evidence
> necessary to support such a conviction, nor any other
> standard greater than some evidence applies in this
> context.

Hill, 472 U.S. at 456 (internal citations omitted).  Moreover,

the Court stated:  "The Federal Constitution does not require

evidence that logically precludes any conclusion but the one

reached by the disciplinary board.  Instead, due process in this

context requires only that there be some evidence to support the

findings made in the disciplinary hearing."  Id. at 457.  See

also Thompson v. Owens, 889 F.2d 500, 502 (3d Cir. 1989); Moles

v. Holt, 221 Fed. Appx. 92, 94 (3d Cir. Mar. 23, 2007)("A court

need not undertake a searching inquiry to ascertain the presence

of 'some evidence' supporting a disciplinary ruling; the

'relevant question is whether there is *any* evidence in the record

that could support the conclusion reached by the disciplinary

board.'"(quoting Hill, 472 U.S. at 455-56)(emphasis added in

Moles)).  Further, "a challenge that goes to the weight of the

evidence is irrelevant to the issue of whether the DHO's finding had a constitutionally sufficient evidentiary basis." Moles, supra (citing Thompson v. Owens, 889 F.2d at 502).

Here, there is sufficient evidence noted by the CDC and approved by the DHO, in reaching the determination that Petitioner committed the act as charged.  While the CDC Report lists all of the evidence considered at the hearing, including Petitioner's statement, the lab test results, the chain of custody, the Brooklyn House Intake Process Orientation Checklist and Handbook, as well as the miscellaneous documents submitted by Petitioner to support his argument of a false positive test result, the CDC specifically relied upon the positive urinalysis result and the absence of medications that would cause a positive test for Cocaine (Metab).  Consequently, there was more than sufficient evidence presented at the CDC hearing to show that Petitioner had committed the Code 112 violation.  The CDC Report plainly shows that it was "not so devoid of evidence that the findings of the [CDC/DHO were] without support or otherwise arbitrary." Hill, 472 U.S. at 457.

Moreover, Petitioner has failed to proffer any sufficiently credible contradictory evidence.  The procedures enunciated in Wolff, supra, were complied with, and there was "some evidence", in accordance with Hill, supra, to support the CDC's finding of guilt.  See Sinde v. Gerlinski, 252 F. Supp.2d 144, 150 (M.D. Pa. 2003)("If there is 'some evidence' to support the decision of the

hearing examiner, the court must reject any evidentiary challenges by the plaintiff")(quoting <u>Hill</u>, 472 U.S. at 457).

Finally, Petitioner argues that the sanctions imposed by the DHO were excessive.  Federal regulations provide that for a Code 112 sanction, a DHO may disallow between 50 and 75 percent (27 to 41 days) of good conduct time available, and forfeit 100 percent of non-vested GCT credits.  28 C.F.R. § 541.13, Table 3.  The sanctions imposed against Petitioner included 40 days loss of GCT and 80 days loss of non-vested GCT.  Clearly, the sanctions imposed in this instance fall within the range of sanctions allowed in the relevant regulation.

Therefore, there is no basis to expunge the incident report and sanctions imposed because Petitioner has not proven that he was denied due process or that there was insufficient evidence to support the disciplinary finding and sanctions.  Accordingly, this habeas petition will be denied for lack of merit.

<u>CONCLUSION</u>

Based upon the foregoing, the petition for a writ of habeas corpus under 28 U.S.C. § 2241 will be denied for lack of merit. An appropriate Order accompanies this Opinion.


s/Renée Marie Bumb
RENÉE MARIE BUMB
United States District Judge

Dated: November 20, 2012